BOWES, Judge.
Plaintiff appeals a judgment of the trial court dismissing its suit against Crown Point Industries, Inc. for breach of contract. We affirm.
Arteck Services, Inc. (Arteck) is engaged in the application of polyurethane foam and other specialty coatings. On October 20, 1982, Arteck submitted a proposal to Crown Point Industries, Inc. (Crown), a builder of “Jack-Up” boats, offering to supply the necessary labor and equipment to fill three jack-up boat feet with polyure *347 thane foam to be supplied by Crown Point, for a cost of $2,800.00. The proposal was accepted on November 16,1982, and Arteck was instructed to complete the job as soon as possible.
Arteck claimed that, due to inclement weather, it was unable to commence work until November 18, 1982, when it began to fill the feet of the jack-up boat, M/V Gulf Island I. After a short period, appellant’s workmen left the job site, allegedly without telling anyone why or when they would return. The next day, Friday, November 19, 1982, Mr. Richard of Arteck contacted Mr. Stansberry of Crown to inform him that they had experienced an equipment failure, which was the reason for their withdrawal. Stansberry told Richard that the work had to be completed by that weekend. Richard replied that he could not complete the work with his existing equipment and told Stansberry that Arteck probably could not rent the necessary equipment, either.
Following his conversation with Richard on Friday morning, Stansberry discussed the matter with his superior who, because of pressing construction deadlines, decided to hire another party who could immediately complete the work. Late Friday, Richard re-contacted Stansberry and informed him he would now be able to resume work the next day. However, by that time, Crown had already contracted with a third party to complete the foam application.
Arteck issued an invoice to Crown in the amount of $900.00 dated November 18, 1982. Crown issued a check to Arteck in the amount of $500.00, a figure which it considered as fair compensation for the work that Arteck was able to perform. Arteck was able to fill approximately one-half of one of the three feet. By taking the original contract price, $2,800, and dividing it by the portion of the contract that was completed, one-sixth, Crown determined that $500 was more than adequate compensation for Arteck’s services.
Arteck cashed the check but insisted on full payment of its invoice. When the invoice was not paid, Arteck filed this suit to collect damages for expenses incurred in the operation and its lost profit on the contract.
Appellant assigns the following as specifications of error:
1. It was error for the Parish Court to fail to find that the defendant, Crown Point, breached the agreement with plaintiff, Arteck, for the installation of polyurethane foam on the subject vessel and all as provided by the written proposal and purchase order which are the basis of the contract.
2. The Trial Court erred in finding that defendant, Crown Point, lawfully terminated the agreement when the defendant failed to put plaintiff, Ar-teck, in default for nonperformance.
3. Trial Court erred in finding that the agreement of the parties provided that time was of the essence.
4. The Trial Court erred in rendering judgment in favor of the defendant and committed manifest error in holding that the plaintiff failed to prove its case for breach of contract by a preponderance of the evidence.
All of the issues before the Court depend upon whether there is a reasonable factual basis for the trial court’s finding. An appellate court should not disturb the findings of fact of the trial court in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973), Reck v. Stevens, 373 So.2d 498 (La.1979).
It is a well-settled point of law that a trial court’s findings of fact are accorded great respect. In Temple v. Lindsay, 182 La. 22, 161 So. 8, 9 (1935), the Louisiana Supreme Court determined that the question of whether a contract was performed within a reasonable time or whether a contract was prosecuted with reasonable diligence is a question of fact. Although the obligee’s opinion alone, as to whether the obligor has breached the contract, is not determinative, the trial court may decide whether the contract was performed within a reasonable time.
*348 In this case, the trial court found that Crown did not breach its contract with Ar-teck. A careful review of the record reveals that the trial court based its decision on reasonable factual grounds.
The testimony of Mr. Richard of Arteck and Mr. Stansberry of Crown reveals that Richard disclosed his equipment failure to Stansberry on Friday, November 19, 1982. At the time of that conversation, Richard stated that he probably could not complete the contract with his equipment and he probably could not rent someone else’s equipment. From what Richard told Stans-berry, Arteck could not perform the work without undue delay. Richard, having worked on ship construction jobs in the past, was aware that certain portions of the construction had to be completed before other operations could commence. Ar-teck’s absence from the job site had already caused a delay in the construction of this vessel. As far as Crown knew, it could not longer rely on Arteck to accomplish the contracted task.
On the basis of this evidence, the trial court properly concluded that Crown did not breach the contract. Crown was willing to let Arteck perform, however, once Crown learned that Arteck probably could not complete the contract, Crown’s only reasonable alternative was to hire another party to complete the installation of the foam in the barge feet.
It is the position of Crown that time was of the essence in the performance of the contract. Crown argues that the trial court’s finding that time was of the essence is supported by the evidence. The testimony of plaintiff’s witness, Richard, indicates that Arteck knew that the work had to begin as soon as possible, that any delay by Arteck could delay other work on the vessel, and that Arteck knew that a delay by Arteck could cause Crown to default on the principal contract. These facts, plus a proper consideration of the nature of the maritime construction industry, form a reasonable factual basis for the trial court to find that time was of the essence in the performance of the contract. If time was of the essence, notification of default was unnecessary. Watson v. Feibel, 139 La. 375, 71 So. 585 (1916).
However, even if time was not of the essence, Crown would not be required to place Arteck in formal default. In Watson, supra, the Louisiana Supreme Court discussed the reasons for the doctrine of default and noted that an obligee was not required to go through the mechanics of the default process when the process becomes a vain ceremony. The Court recognized that putting an obligor in default was needless whenever there is a refusal or an acknowledged inability to perform.
In this case, there was no need to place Arteck in default because Crown had every reason to believe that Arteck was unable to perform the operation. Furthermore, Crown could not be sure that Arteck’s replacement equipment would prove satisfactory. It was reasonable to believe that the substitute equipment might not be able to do the job adequately. Rather than running the risk of more delays from equipment failure, Crown chose to hire another subcontractor who could perform the work. Crown could not afford to risk additional losses caused by delay.
In this situation, placing Arteck in default would be a vain gesture. Arteck admitted that it could not perform the work called for in the contract. To engage in the process of placing Arteck in default would be to engage in the useless ceremony that the Court spoke of in Watson v. Feibel, supra.
Clearly, the trial court in the case at bar properly found that time was of the essence and that plaintiff knew this. Because time was of the essence, Crown was not obligated to place Arteck in default prior to securing another contractor to perform the work. Watson, supra.
Lastly, the appellant assigns as error that the trial court’s finding that Arteck Services, Inc. failed to prove its case for breach of contract was manifestly erroneous.
*349 The only witness which the plaintiff produced was Richard. Richard’s testimony is the only evidence of damages and of how the bid price of $2,800 was computed.
Richard testified that Arteck incurred expenses for a helper totaling $100.00 per day, plus daily expenses estimated at $300.00, and transportation costs of $100.00 per day. However, the plaintiff did not produce the helper, nor did he introduce any supporting evidence of these expenses. The only evidence was Richard’s self-serving testimony. In addition, the only evidence as to the computation of the proposed contract price was Richard’s testimony. No business records were introduced by Arteck.
Arteck did not call Mr. Tom Roche, the party from whom Arteck alleges to have rented the replacement equipment, in order to support its claim that Arteck secured the replacement equipment.
While it is true that a trial court may rely upon a plaintiff’s testimony to prove damages, a trial court is not obligated to find that a plaintiff’s testimony alone proves his damages by a preponderance of the evidence.
While the absence of independent, corroborating evidence may not be fatal to the plaintiff’s burden of proof, the lack of even a minimal degree of detail or specificity as to the extent of loss precludes an award.
Campbell v. Lelong Trust, 327 So.2d 533 (La.App.2d Cir.1976) at 536, Recherche, Inc. v. Jewelry Jungle, Inc., 377 So.2d 1329 (La.App. 1st Cir.1979).
In this case, the trial court simply believed that the plaintiff did not carry his burden of proof. We agree and we find no reason to believe that the trial court’s decision was manifestly erroneous. Therefore, this Court will not disturb the trial court’s finding of fact.
Accordingly, for. the reasons assigned, we affirm the judgment of the trial court. Costs of this appeal are to be borne by appellant.

AFFIRMED.